IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| GARY MONTGOMERY,<br>#548597, | )<br>)<br>) |
| Plaintiff, | ) No. 3:23-cv-00275<br>) |
| v. | ) Judge Trauger<br>) Magistrate Judge Newbern |
| PHILIP E. SMITH, *The Estate of Philip*<br>*E. Smith, et al.*, | )<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION

Gary Montgomery, an inmate of the Davidson County Sheriff's Office in Nashville, Tennessee, filed this pro se complaint[1] against The Estate of [Judge] Philip E. Smith, Lesley Burnett Montgomery, Doug Rogers, Birthright Title, Property Title Services, Regal Realty Group, Vicki Herti, Exit Real Estate Solutions, Brandon Schneider, William H. Stover, Unknown Closing Title Company, and Jonathan Taylor. (Doc. No. 1). The plaintiff alleges claims under 42 U.S.C. § 1983 and the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §101, *et seq*. The plaintiff also alleges tort claims under Tennessee law.

The complaint is before the court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A.

**I. PLRA Screening Standard**

Under 28 U.S.C. § 1915(e)(2)(B), the court must dismiss any portion of a civil complaint filed in forma pauperis that fails to state a claim upon which relief can be granted, is frivolous, or

---

[1] The plaintiff paid the full civil filing fee. (Doc. No. 1)

1

seeks monetary relief from a defendant who is immune from such relief. Section 1915A similarly requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," *id.* § 1915A(a), and summary dismissal of the complaint on the same grounds as those articulated in Section 1915(e)(2)(B). *Id.* § 1915A(b).

The court must construe a pro se complaint liberally, *United States v. Smotherman*, 838 F.3d 736, 739 (6th Cir. 2016) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and accept the plaintiff's factual allegations as true unless they are entirely without credibility. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007) (citing *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)). Although pro se pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520121 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with pro se complaints does not require us to conjure up [unpleaded] allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

## II. Alleged Facts

The plaintiff's then-wife, Lesley Burnett Montgomery (LBM), and her lover, Jonathan Taylor, created a fictitious story alleging that the plaintiff planned to have his wife killed. Taylor acted as a confidential informant, and his reporting eventually led to the plaintiff's arrest. This scheme was devised so that the LBM and Taylor could raid the plaintiff's 401k plan, take control of his money, and deprive the plaintiff access and use of his money.

Judge Smith did not listen to the plaintiff during "the very first hearing" regarding who owned which assets, including the 401k at issue and certain real property. (Doc. No. 1 at 5). Judge Smith told the plaintiff he "didn't think [the plaintiff] ever had any money" and ignored the

plaintiff's comments concerning the existence of another plan trustee. (*Id*. at 6). Further, when the plaintiff told Judge Smith that attorney William H. Stover had a conflict of interest in representing LBM, Judge Smith ignored the plaintiff.

LBM and Stover conspired to take control of the plaintiff's 401k funds and deprive him access and use of his money. LBM and Stover attempted to sell the assets owned by the plan "with the express purpose of using protected 401k funds to pay LBM's personal debts, loans and IRS tax debt." (*Id*. at 9). The plaintiff objected to this attempt and fought the sale in court.[2] Plaintiff "is uncertain" if LBM "has been able to close the sales transaction." (*Id*. at 10).

LBM began collecting "plan rental income" of $2,200/month from the property located at 382 Lakeview Circle, Mount Juliet, TN 37122 and $1,100/month from the property located at 2718 Donna Hill Drive. "The rental income represented the growth of the fund and was not the personal property of plaintiff or LBM and was required to be used to purchase additional real property to rent out and add to long-term retirement of each plan participant." (*Id*. at 7).

LBM obtained court permission to collect and manage the fund income. She ignored her duty to act as a fiduciary and trustee for the benefit of the plan participants. She began co-mingling funds. She never provided disclosures required by ERISA. She placed the plaintiff's future retirement in jeopardy. The plaintiff estimates that LBM collected $234,300 from July 2016 to and including May 2022. LBM used these funds for her personal expenses and pleasure, including paying commissions and fees to real estate professionals without the authorization of plan participants. She intentionally failed to pay real property taxes. LBM refused to process the plaintiff's loan from his 401k assets.

---

[2] The record does not identify the case name or number or the court in which the case was filed. It is unclear if this case remains pending.

3

Case 3:23-cv-00275   Document 3   Filed 06/06/23   Page 3 of 9 PageID #: 41

During the final hearing in the plaintiff and LBM's divorce case, Judge Smith allowed Stover to ask as many questions as he wanted, but Judge Smith limited the number of questions the plaintiff, who was acting pro se, could ask. Judge Smith "cherry picked" the items submitted to the appeals court "to avoid a legitimate review." (*Id*. at 8).

LBM and Stover requested that the plaintiff be replaced as trustee and plan administrator in May 2022. They did not notify the plaintiff of their request. Judge Smith stated in court that he did not believe the plaintiff ever had a 401k account.

### III. Analysis

####   A. Federal Claims

The complaint alleges numerous violations of ERISA, including breach of fiduciary duty and participation in prohibited transactions.[3] The complaint also alleges that certain defendants conspired with one another to commit ERISA violations.

Claims brought under ERISA are subject only to the simplified pleading standard of Rule 8 of the Federal Rules of Civil Procedure. *In re Cardinal Health, Inc. ERISA Litig*., 424 F.Supp.2d 1002, 1015 (S.D. Ohio 2006); *see also Swierkiewicz v. Sorema N.A*., 534 U.S. 506 (2002). Under Rule 8, the court will construe pleadings "'liberally in order to prevent errors in draftsmanship from barring justice to litigants.'" *Minadeo v. ICI Paints*, 398 F.3d 751, 762 (6th Cir. 2005) (quoting *Ritchie v. United Mine Workers of Am*., 410 F.2d 827, 832 (6th Cir. 1969)).

ERISA § 404(a)(1) sets forth the primary duties of an ERISA fiduciary, providing that a fiduciary must: (1) act solely in the interest of plan participants and beneficiaries for the exclusive purpose of providing benefits to participants and their beneficiaries; (2) act with the care, skill,

---

[3] Prohibited transactions under ERISA § 406 fall into two categories: subsection (a) prohibits a plan fiduciary from causing a plan to engage in any of five different kinds of transactions with a party in interest, and subsection (b) prohibits acts of self-dealing by a plan fiduciary and any other acts that implicate a conflict of interest in a transaction involving the plan or its assets. 29 U.S.C. § 1106(a) & (b).

prudence, and diligence under the circumstances then prevailing that a prudent person acting in like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims; (3) diversify the investments of a plan so as to minimize the risk of large losses; and (4) act in accordance with the documents and instruments governing the plan insofar as they are consistent with the provisions of Titles I and IV of ERISA. 29 U.S.C. § 1104. A fiduciary may be personally liable for, and removed as a fiduciary as a result of, any breaches of the responsibilities, obligations, and duties imposed by the statute while acting as a fiduciary under ERISA. ERISA § 409. 29 U.S.C. § 1109. Generally, to state a claim for breach of fiduciary duty under ERISA, a plaintiff must allege that: (1) the defendant was a fiduciary of an ERISA plan who, (2) acting within his capacity as a fiduciary, (3) engaged in conduct constituting a breach of his fiduciary duty. *Id*.

Here, the complaint alleges that LBM is a "fiduciary/trustee/plan administrator of Plaintiff's 401k fund." (Doc. No. 1 at 3). The complaint further alleges that LBM, while acting within her capacity as fiduciary, engaged in multiple acts constituting a breach of her statutory duties under ERISA. These acts, according to the complaint, were taken for the purpose of enabling LBM to access and utilize the plaintiff's 401k funds to LBM's personal benefit. For purposes of the required PLRA screening, these allegations state a non-frivolous breach of fiduciary duty claim under ERISA against LBM. With at least one colorable claim, this complaint will proceed for further development of the plaintiff's ERISA claims.

The complaint also alleges that the late Judge Philip E. Smith[4] "violated Plaintiff's constitutional rights in not providing due process, equal protection and application of the laws, denial of fair and full access to the courts/judicial process and for negligent enrichment and

---

[4] The complaint names the Estate of Philip E. Smith as a defendant.

violation of ERISA mandates." (Doc. No. 1 at 11). These claims are brought under Section 1983, not ERISA.

Title 42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws . . . ." To state a claim under Section 1983, a plaintiff must allege and show two elements: (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. *Dominguez v. Corr. Med. Servs.,* 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Panama Heights*, 437 F.3d 527, 533 (6th Cir. 2006)); 42 U.S.C. § 1983.

"It is well-established that judges enjoy judicial immunity from suits arising out of the performance of their judicial functions." *Leech v. DeWeese*, 689 F.3d 538, 542 (6th Cir. 2012) (quoting *Brookings v. Clunk*, 389 F.3d 614, 617 (6th Cir. 2004) (citing *Mireles v. Waco*, 502 U.S. 9, 11 (1991)). Even judges themselves, however, "are not entitled to absolute immunity when acting in their administrative capacity." *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435 (1993) (citing *Forrester v. White*, 484 U.S. 219, 229 (1988)). "[T]he paradigmatic judicial act is the resolution of a dispute between parties who have invoked the jurisdiction of the court." *Morrison v. Lipscomb*, 877 F.2d 463, 465 (6th Cir. 1989) (citing *Forrester*, 484 U.S. at 226, 108 S.Ct. 538). Outside of that core judicial function, however, the court must engage in a close analysis to determine whether the act of a judge is sufficiently closely related to judging to warrant immunity. In so doing, the court considers "the nature of the function at issue and not merely . . . the identity of the actor or the harm caused." *Watts v. Day*, 129 F. App'x 227, 232 (6th Cir. 2005) (citing *Lomaz v. Hennosy*, 151 F.3d 493, 497 (6th Cir. 1998)).

This inquiry typically includes two components: "First, a court must determine whether an act is related to those general functions that are normally performed by a judicial officer. Second, a court must assess whether the parties expected to deal with the judicial officer in the officer's judicial capacity." *Cooper v. Parrish*, 203 F.3d 937, 945 (6th Cir. 2000) (citing *Stump v. Sparkman*, 435 U.S. 349, 362 (1978)). The courts have identified certain "factors 'characteristic of the judicial process'" that would support an inference that an official was acting in a judicial capacity, including "the importance of precedent; . . . the adversary nature of the process; and . . . the correctability of error on appeal." *Flying Dog Brewery, LLLP v. Mich. Liquor Control Comm'n*, 597 F. App'x 342, 348 (6th Cir. 2015) (quoting *Cleavinger v. Saxner*, 474 U.S. 193, 202 (1985)).

Here, the court finds that the record is not sufficiently developed at this stage of the litigation to determine the scope of judicial immunity to be afforded to the late Judge Smith with respect to his various actions as alleged in the complaint. Consequently, the plaintiff's Section 1983 claims against the Estate of Philip E. Smith will be permitted to proceed beyond this initial screening and will be subject to appropriate challenges by the defendants under the applicable rules and case law.

Finally, the complaint alleges that certain defendants engaged in criminal activity and asks the court to to issue a "criminal referral" to "the appropriate federal authority or law enforcement agency." (Doc. No. 1 at 12).

To the extent that the plaintiff asks the court to initiate criminal charges against certain individuals and entities on his behalf, the "[a]uthority to initiate a criminal complaint rests exclusively with state and federal prosecutors." *Tunne v. U.S. Postal Service*, No. 5:08CV-189-R, 2010 WL 290512, at *1 (W.D. Ky. Jan. 21, 2010) (quoting *Sahagian v. Dickey*, 646 F. Supp. 1502, 1506 (W.D. Wis. 1986)). Private citizens have "no authority to initiate a federal criminal

7

prosecution of the defendants for their alleged unlawful acts." *Williams v. Luttrell*, 99 F. App'x 705, 707 (6th Cir. 2004). "While a citizen may make a complaint regarding suspected criminal conduct to the proper authorities, the choice to bring criminal charges pursuant to Tennessee law is left to the discretion of the appropriate District Attorney General." *Sanford v. Armour*, No. 19-1270-JDT-cgc, 2020 WL 4369452, at *10 (July 30, 2020). This court lacks jurisdiction to initiate any investigations of alleged criminal activity upon request of the plaintiff.

B. State Claims

The complaint generally alleges state tort claims of "conspiracy to defraud, theft, attempted theft, fraud, comingling of funds, unjust enrichment, conversion and negligent enrichment." (Doc. No. 1 at 2). It is unclear against which defendants these claims are brought.

28 U.S.C. § 1367(a) provides that:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . .

*Id*. The district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it ha[d] original jurisdiction . . . ." *Id*. at § (c)(3).

Because at least one of the plaintiff's federal claims survives the required PLRA screening, the court will exercise supplemental jurisdiction to hear the plaintiff's state tort claims, to the extent any such claims are properly asserted. At this time, the court makes no representation as to the timeliness or viability of such claims.

## IV. Conclusion

The court has screened the complaint pursuant to the PLRA and determines that the plaintiff has alleged at least one colorable claim under ERISA. Therefore, this case will proceed. The plaintiff will be required to present facts to support his allegations as this case progresses.

Because at least one of the plaintiff's federal claims survives the required PLRA screening, the court will exercise supplemental jurisdiction over the plaintiff's state tort claims.

An appropriate order will be entered.

_____
Aleta A. Trauger
United States District Judge