**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **GARY MONTGOMERY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:23-cv-00275** |
| | ) | **Judge Aleta A. Trauger** |
| **PHILIP E. SMITH *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM**

Magistrate Judge Alistair Newbern issued a Report and Recommendation in August 2024 ("2024 R&R") (Doc. No. 75), recommending that four pending Motions to Dismiss—filed by nine of the twelve defendants—be granted. In September 2024, after plaintiff Gary Montgomery—who is incarcerated and proceeds *pro se*—failed to lodge timely objections, this court entered an Order accepting the R&R, granting the Motions to Dismiss, and returning the case to the Magistrate Judge under the original referral order. (Doc. No. 77.) At the same time, the court entered an Order to Show Cause ("2024 Show Cause Order") why the plaintiff's claims against two unserved defendants should not be dismissed under Federal Rule of Civil Procedure 4(m), for failure to effect timely service of process. (Doc. No. 78.) Effectively nothing else happened in this case over the next the seventeen months, at which point the court entered an Order to Show Cause ("2026 Show Cause Order") why the action should not be dismissed for failure to prosecute. (Doc. No. 81.)

On February18, 2026, the plaintiff filed a Response to the 2026 Show Cause Order (Doc. No. 82) and, at the same time, a Motion to Set Aside Judgment (Doc. No. 83), based on his never

having received the 2024 R&R and having no notice of it until the court entered the 2026 Show Cause Order. Magistrate Judge Luke Evans, to whom the case was reassigned following Judge Newbern's resignation, issued a Report and Recommendation ("2026 R&R"), recommending that the plaintiff's Motion to Set Aside Judgment be granted. Over the defendants' objections, the undersigned accepted that recommendation and reopened the case for the limited purpose of allowing the plaintiff to lodge objections to the 2024 R&R. (Doc. No. 105.) The court also directed the plaintiff to respond to the 2024 Show Cause Order, which the plaintiff apparently had also not previously received.

Now before the court is the plaintiff's "Response to Show Cause Order and Objection to Magistrate's Report and Recommendation Filed 8/19/2024" (Doc. No. 112), to which two of the defendants have filed Responses. (Doc. Nos. 113 (Hertel response), 114 (Stover response).) For the reasons set forth herein, the plaintiff's Objection will be overruled, and the 2024 R&R will be accepted in part. The court will grant three of the four pending Motions to Dismiss (Doc. Nos. 27, 35, 43), dismiss *sua sponte* the remaining ERISA claims as barred by the *Rooker-Feldman* doctrine, and decline to exercise supplemental jurisdiction over any remaining state law claims. The default entered against defendant Thomas Longaberger (Doc. No. 80) will be vacated, and this case will be dismissed in its entirety. All other pending motions, including defendant Stover's Motion to Dismiss (Doc. No. 47), will be terminated as moot.

## I. STANDARD OF REVIEW

When a party "serve[s] and file[s] specific written objections to [a magistrate judge's] proposed findings and recommendations," the district court must review *de novo* any portion of the report and recommendation "that has been properly objected to." Fed. R. Civ. P. 72(b)(2), (3). In conducting its review, the district court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with

instructions." *Id.*

However, the district court is not required to review—under a *de novo* or any other standard—those aspects of the report and recommendation to which no objection is made. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). The district court should adopt the magistrate judge's findings and rulings to which no specific objection is filed, *id.* at 151, so long as the court is "satisf[ied] that there is no clear error on the face of the record in order to accept the recommendation," Fed. R. Civ. P. 72 advisory committee's note to 1983 amendment. "The filing of vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object." *Cole v. Yukins*, 7 F. App'x 354, 356 (6th Cir. 2001); *see also Langley v. DaimlerChrysler Corp.*, 502 F.3d 475, 483 (6th Cir. 2007) (issues raised in a "perfunctory manner, unaccompanied by some effort at developed argumentation," are waived (quoting *Indeck Energy Servs., Inc. v. Consumers Energy Co.*, 250 F.3d 972, 979 (6th Cir. 2000))). Likewise, "[a] general objection to the entirety" of a magistrate judge's report and recommendation has the same effect as a complete failure to object. *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Finally, arguments made in an objection to a magistrate judge's report and recommendation that were not first presented to the magistrate judge for consideration are deemed waived. *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000).

Although *pro se* pleadings and filings are held to less stringent standards than those drafted by lawyers, *see, e.g.*, *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011), *pro se* litigants are not entirely exempt from the requirements of the Federal Rules of Civil Procedure. *See, e.g.*, *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

## II. BACKGROUND

Gary Montgomery's claims all arise from the division of property in his underlying divorce from unserved defendant Leslie Burnett Montgomery ("LBM"). In addition to suing LBM, he also

brings claims against her alleged romantic partner, Jonathan Taylor; the Estate of the late Tennessee Circuit Court Judge Philip E. Smith ("Smith"), who presided over the divorce proceedings;[1] LBM's divorce attorney, William H. Stover; real estate agent Vicki Hertel and Regal Realty Group ("Regal"); real estate agent Brandon Schneider and Exit Real Estate Solutions ("Exit"); prospective property buyer Doug Rogers; title companies Birthright Title ("Birthright"), and Property Title Services ("Property Title"); and Montgomery's former criminal defense attorney Thomas A. Longaberger. (Doc. No. 11, First Am. Compl. ("FAC").)

The factual allegations in the FAC are set forth in some detail in the 2024 R&R, and the court adopts that factual recitation herein and presumes familiarity with those facts. (Doc. No. 75 at 2–10.) For purposes of this ruling, it suffices to say that LBM filed for a divorce from Montgomery in 2016, while Montgomery was a pretrial detainee on criminal charges.[2] Judge Philip Smith presided over the divorce proceedings, and defendant Stover represented LBM. Montgomery represented himself.

In January 2020, Smith entered a Final Decree of Divorce ("Final Decree"). Smith found that two parcels of real property at issue, referred to in the 2024 R&R as the Lakeview Property and the Donna Hill Property, were both marital property. Although the Lakeview Property was originally purchased by Montgomery alone and was owned by a 401K plan of which Montgomery

---

[1] The court takes judicial notice that Judge Smith died in September 2022, after the conclusion of the plaintiff's divorce proceedings but prior to the filing of this lawsuit.

[2] As the R&R details, Montgomery was convicted of one count of solicitation of felony murder in the Davidson County Criminal Court on July 19, 2023, for trying to hire Jonathan Taylor to murder LBM. Over the next several years, Montgomery was "indicted two more times, first for attempting to hire a cellmate to murder his wife and Taylor, and second for attempting to hire a cellmate to murder his wife, Taylor, the first cellmate, and Montgomery's first appointed counsel." (Doc. No. 75 at 4 (quoting *Montgomery v. Hall*, No. 3:21-cv-00701, 2022 WL 2721056, at *1 (M.D. Tenn. June 6, 2022)).) Those charges remain pending. (*See id.* at 4 & n. 3.) Montgomery maintains that all of the allegations against him are based on "lies and fraud." (FAC ¶¶ 30–33.)

was the sole trustee, Smith found that the house was purchased with proceeds from a loan on LBM's 401K plan that had been deposited into the plaintiff's 401K plan and then used to purchase the property. In addition, Smith found that the Donna Hill Property was titled in both parties' names and was also marital property. (*See* Doc. No. 38-1 at 9–10.) Smith found that an IRS levy on LBM's paycheck for unpaid taxes was marital debt because the debt was "the result of unpaid taxes on a security account that . . . Montgomery controlled" and that a loan to pay off an HVAC system for the Lakeview Property was also marital debt. (*Id.* at 10–11.) Based on these findings, Smith's Final Decree (1) ordered LBM to sell the Lakeview Property and vested in her the sole authority to select the real estate listing agent; (2) ordered LBM to forward any serious offers to her counsel, for him to forward to Montgomery; and (3) ordered LBM to direct the closing agent to pay off the IRS debt and the HVAC installment debt from the proceeds of the sale. (*Id.* at 18–19.) The Final Decree also ordered that the net proceeds of the sale of the Lakeview Property be divided equally between the parties and that Montgomery's portion of the proceeds be "held and deposited into an interest-bearing escrow account with the clerk at the circuit court until such time as this Final Decree becomes final." (*Id.* at 19.) LBM was awarded the Donna Hill Property free and clear, and she was to be solely responsible for all mortgage, tax, and insurance payments on the property going forward. (*Id.*) The Lakeview Property was sold some time in 2022, and the sum of $188,034 was submitted to the Davidson County District Court to be held in escrow. (Doc. No. 38-4.)

In this lawsuit, the plaintiff's claims against Smith are based on his allegedly having (1) "abused the process and his discretion by declaring all assets marital property . . . when the contributions [by Montgomery and LBM to the 401K Plan] were clearly kept separate" (FAC ¶ 55); (2) violated "ERISA's protections" by destroying the 401K Plan and allowing its assets to be

used to pay "LBM's personal IRS tax debt of $40,000" (*id.* ¶ 56); (3) "unreasonably debased [Montgomery's] retirement account and its ability to earn/grow in the future" by requiring that proceeds from the sale of the Lakeview Property be deposited into a "court controlled bank account paying 0.25% interest" (*id.* ¶ 58);[3] and (4) further abused his discretion by denying Montgomery a transcript of the divorce proceedings and "cherry pick[ing]" evidence to be included in the record on appeal "to avoid any legitimate review" when Montgomery appealed (*id.* ¶ 60). Montgomery asserts that Smith violated his federal constitutional rights to due process, equal protection, and access to the courts, "ignor[ed] ERISA law," and generally abused his judicial discretion in making his rulings in the divorce. (*Id.* ¶¶ 88–90.)

The plaintiff alleges that LBM and Taylor, her "lover/boyfriend," hatched a plan in 2016 to "defraud plaintiff of assets and steal his solo 401k retirement money." (*Id.* ¶ 27.) This plan culminated in the false allegations that Montgomery attempted to solicit Taylor to murder LBM so that Montgomery would be arrested and LBM and Taylor could "raid plaintiff's retirement account." (*Id.* ¶ 28.) Montgomery also alleges that LBM conspired with Stover to get the court to believe that the Lakeview Property and Donna Hill Property were both marital property, even though LBM's name had never been on either title. (*Id.* ¶ 31.) He also claims that Stover had a conflict of interest in representing LBM, because he had previously been hired by both Montgomery and LBM to evict Taylor from the Donna Hill Property. (*Id.* ¶ 35.)

According to the plaintiff, once LBM was granted control of the rental property (Donna Hill Property) during the divorce, she "assumed a fiduciary role to the plan participants," because the property was owned by the 401k plan and the collection of rental income was "the primary

[3] The court observes that Smith's Final Decree only required that the funds be held in a court-controlled escrow account "until such time as this Final Decree becomes final." (Doc. No. 38-1 at 19.)

way the 401k plan increases in value." (*Id.* ¶ 42.) She violated her fiduciary duties by "commingl[ing] the rental income . . . with her personal funds," from June 2016 through June 2022. (*Id.*) Montgomery claims that these funds are protected by ERISA and were negatively affected by LBM's management of the property. (*Id.*)

Montgomery alleges that, following entry of the Final Decree, he received a signed offer and counteroffer for the Lakeview Property on September 30, 2021, to which he immediately objected because he had never approved or signed a listing agreement and had not received prior notice of an offer until everything was already signed. (*Id.* ¶¶ 61–62.) Ultimately, he claims, the sale was illegitimate because LBM did not own and was not authorized to sell the property. (*Id.* ¶ 64.) The plaintiff filed a "legal *lis pendens* notice and sent that to the court and all defendants to avoid any mistake by closing the sale." (*Id.* ¶ 65.) After a hearing in April 2022, however, Smith, over Montgomery's objections, appointed LBM to replace plaintiff as the 401K plan administrator, thus giving her the authority to sell the Lakeview Property. (*Id.* ¶ 66.) Smith also announced at the hearing, "I don't think you ever had a 401k account." (*Id.*) According to Montgomery, he has never received an accounting or copies of the paperwork concerning the sale of the Lakeview Property. (*Id.* ¶¶ 67–68, 71.)

Judge Smith, in fact, entered an Order on December 13, 2021, after a hearing on December 10, 2021, granting LBM's motion for an order approving the sale of the Lakeview Property to Doug Rogers and authorizing LBM to sign all necessary closing documents. (Doc. No. 38-2.) The Order also directed the closing agent to disburse to LBM her 50% share of the net proceeds (after payment of the marital debts) at closing and to pay Montgomery's share into the Davidson County Circuit Court Clerk's office. (*Id.*) Montgomery, though incarcerated at the time, appeared in person at the hearing. (*Id.*)

Smith held a second hearing regarding the sale of the Lakeview Property on February 25, 2022, at which LBM and Montgomery appeared. (Doc. No. 38-3.) In an Order entered on April 21, 2022, Smith found that, "to facilitate the sale of the real property, a substitute Plan Administrator and Trustee must be appointed," and he appointed LBM as plan administrator and trustee of the 401K Plan "for the purpose of executing the sale, and transfer of the property to the new buyer." (*Id.* at 2.) The Order also specifically relieved Montgomery of "any further responsibility, authority, or right to interfere" with LMB's appointment as substitute plan administrator for purposes of consummating the sale of the property. (*Id.*)

Although the record does not reflect the terms of the Lakeview Property's final sale, Logos Realty Closing Services (not a defendant) filed a Notice of Submission of Funds to the Court in the amount of $188,038.72. (Doc. No. 38-4.)

The plaintiff claims that prospective purchaser, Doug Rogers, allegedly "failed to heed plaintiff's notices and warning letters [that] there was a *lis pendens* on the 401k plan property he was attempting to purchase" and "intentionally chose to continue to conspire with LBM, Stover, title companies and the real estate professionals." (*Id.* ¶ 85.) Similarly, the plaintiff claims that the title companies, despite notice and warning letters, "chose to continue the fraud and conspiracy with LBM, Stover and others" by moving toward closure of the sale, without investigating and verifying the true owner of the property, thus violating "RESPA laws." (*Id.* ¶ 86.) The plaintiff alleges generally that the real estate agents and firms violated their state law duties to disclose and to act in good faith and, instead, chose to conspire with LBM, Stover, and others to get a commission. (*Id.* ¶ 87.)

Montgomery also alleges that he hired defendant Thomas Longaberger to represent him in his criminal case. Because Montgomery did not have access to funds, he agreed to pledge "his

personal home and make payments starting years down the road at zero percent interest." (*Id.*) The plaintiff signed a contract presented to him by Longaberger without actually reading it, other than seeing "the $25,000 in the middle of the page." (*Id.*) He believes Longaberger later used this document to secure a personal loan using the plaintiff's 401K property as collateral. The plaintiff filed a complaint with the Board of Professional Conduct. Several months later, Longaberger breached the contract by "quitting," allegedly because of health issues. (*Id.* ¶¶ 78–79.) Longaberger later filed a lien against the plaintiff's 401K property and made a demand for $25,000, knowing the plaintiff could not pay it and despite not having performed any work. The plaintiff successfully won a delay when Longaberger attempted to initiate foreclosure proceedings to force a sale of the plaintiff's "free and clear 401k property." (*Id.* ¶ 82.) However, Longaberger's "attempted fraud became actual fraud and conversion when the title companies recognized that illegitimate loan" when the property was sold. (*Id.* ¶ 83.)

The plaintiff filed this lawsuit in March 28, 2023, and he filed the FAC on July 11, 2023, adding Longaberger as a defendant and removing "Unknown Title Company" as a defendant. (FAC, Doc. No. 11.) The FAC purports to set forth claims under 42 U.S.C. § 1983 (and other federal civil rights laws), the Employment Retirement and Income Security Act ("ERISA"), the Real Estate Settlement Procedures Act ("RESPA"), and Tennessee law, though the plaintiff does not specifically articulate which claims are brought against which defendants. He seeks declaratory and injunctive relief, as well as compensatory damages.

The Clerk of Court issued summonses for each defendant named in the FAC and forwarded them to the U.S. Marshals Service to effect service of process. Property Title, Exit, Schneider, Rogers, and Birthright waived service (Doc. Nos. 23, 24). Hertel, Regal, and Stover were served

and entered appearances (Doc. Nos. 30, 32, 33, 48, 49). Longaberger has not entered an appearance or otherwise responded to the FAC, and defendants LBM and Taylor have never been served.

Montgomery moved for entry of default against Longaberger (Doc. No. 59) and LBM (Doc. No. 62), who had not appeared. The Clerk of Court denied Montgomery's motion on May 16, 2024, finding that, with regarding to LMB, the plaintiff could not verify service of process "because the Process Return filed by the USMS confirms that it was unsuccessful in its attempt to secure service." (Doc. No. 70.) As to Longaberger, the Clerk found that, "while there is evidence in the record that service of process was achieved as to Longaberger," Montgomery's motion was procedurally deficient regarding Longaberger. (*Id.*) Montgomery filed a second Motion for Entry of Default as to Longaberger on August 1, 2024, which the Clerk of Court granted on November 8, 2024. (Doc. Nos. 72, 80.) Based on the Clerk's denial of his motion against LBM, it is clear that the plaintiff knew in 2024 that LBM had not been served.

All of the defendants except for Longaberger, LBM, and Taylor (who has also not been served and has not entered an appearance) filed Motions to Dismiss. The 2024 R&R recommends that all of these motions be granted. Specifically, the R&R finds that Montgomery's claims against all of the defendants are barred by the *Rooker-Feldman* doctrine, insofar as the plaintiff's claims seek to vacate Smith's Final Decree and to undo the sale of the Lakeview Property that was effected in accordance with the Final Decree and subsequent orders entered by Smith. (*See* Doc. No. 75 at 22 ("Comparison of Montgomery's amended complaint with the state court divorce proceeding orders readily shows that most of what Montgomery seeks in this Court is to undo what Smith ordered in the divorce.").) The Magistrate Judge finds that, even though Montgomery framed his claims in terms of ERISA violations and wrongdoing by the defendants, and even though the FAC affirmatively avers that "'[t]his matter is <u>not</u> an attempt to re-litigate any case,'"

"the amended complaint is, at heart, a second appeal of the Montgomerys' divorce." (Doc. No. 75 at 22 (quoting FAC at 2).)

In addition, the Magistrate Judge considered additional allegations against the moving defendants to determine whether the FAC pleads claims against these defendants that are not subject to the *Rooker-Feldman* bar. With one exception, he concludes that it does not. Recognizing that the plaintiff's claims that LBM and Stover engaged in "fraud and misrepresentation" during state court proceedings are not subject to the *Rooker-Feldman* bar, the Magistrate Judge observes that the "conspiracy of fraud and misrepresentations" among the defendants, as alleged by Montgomery, "had one objective: to reap the profits of the Lakeview Property's sale and plunder Montgomery's retirement funds by falsely representing to the state court that LBM owned the Lakeview Property when the 401K Plan was its true owner." (Doc. No. 75 at 25 (citing FAC ¶¶ 34, 38, 64).) But, as the 2024 R&R found, Smith's Final Decree and other Orders were explicitly based on an understanding that the 401K Plan owned the Lakeview Property. (*Id.* at 26 (citing Doc. No. 38-1 at 9, 13; Doc. No. 38-2 at 1–2).) Thus, the Magistrate Judge found that "Montgomery's allegations that LBM and Stover committed fraud by misrepresenting to the state court and the Real Estate defendants that LMB owned the Lakeview Property are not plausible when considered with the public records of the divorce proceedings." (*Id.* at 26.)

Regarding Montgomery's claims that the real estate firms and agents had failed to disclose information to him, failed to act in good faith, had engaged in "self-dealing" and "conspiracy" with all of the other defendants to "get the sale transaction closed," and had breached their statutory professional duties in misrepresenting to the public that LBM was the owner of the Lakeview Property, the Magistrate Judge finds that the FAC does not identify what role any specific real

estate agent or firm played in the events; nor does it allege any specific action taken by any real estate defendant.

Regarding Rogers, the FAC alleges only that he was identified as the buyer on the first real estate contract disclosed to the plaintiff and that he "intentionally chose to continue to conspire with LBM, Stover, title companies and the real estate professionals for self-dealing motives." (FAC ¶ 85.) The FAC does not, however, include any actual *facts* as to how Rogers conspired with any other defendant, nor does it allege any harm resulting from Rogers' alleged "fail[ure] to heed" Montgomery's "warning letters." (*Id.*)

Accordingly, the Magistrate Judge finds that the FAC "does not plausibly allege any conduct by Regal, Hertel, Rogers or other Real Estate Defendants to support claims against them that fall outside *Rooker-Feldman*'s bar and, therefore, that the plaintiff's claims against all of these defendants should be dismissed as barred by *Rooker-Feldman*.

Regarding Stover, the Magistrate Judge finds that the FAC does not plausibly state a malpractice claim against Stover that is not barred by *Rooker-Feldman* but that, insofar as Montgomery alleges that Stover (together with LBM) stole his business records pertaining to the 401K Plan from his private safe, the FAC "may state a conversion claim based on independent conduct that would fall outside the *Rooker-Feldman* bar." (Doc. No. 75 at 30.) However, because it appears that every claim over which the court has original jurisdiction should be dismissed, the Magistrate Judge recommends that the court decline to exercise supplemental jurisdiction over the plaintiff's state law conversion claim against Stover.

Regarding any additional allegations against Smith, which the plaintiff frames as claims under § 1983 (and §§ 1985 and 1986) for violations of his constitutional rights to due process, equal protection, and access to the courts, the Magistrate Judge finds that these claims are based

on actions taken by Smith in his judicial capacity while presiding over the Montgomerys' divorce proceedings. While Smith's acts, as alleged by the plaintiff, could arguably be considered "improper conduct" that is independent of the state court judgment and, therefore, not subject to the *Rooker-Feldman* bar, the plaintiff's claims are, instead, precluded by other doctrines. Specifically, insofar as the claims against Smith in his individual capacity are premised upon actions taken during the performance of his judicial functions, Smith is entitled to absolute judicial immunity, even as to acts "performed in bad faith or with malice." (Doc. No. 75 at 32.) Insofar as the plaintiff sues Smith in his official capacity for money damages and retroactive injunctive relief, the Magistrate Judge finds that Smith is entitled to sovereign immunity under the Eleventh Amendment. (*Id*. at 34–35.)

In sum, the 2024 R&R recommends that the court grant the Motions to Dismiss filed by defendants Rogers, Birthright, Property Title, Exit, and Schneider (Doc. No. 27) and by Regal and Hertel (Doc. No. 35) for lack of subject matter jurisdiction under *Rooker-Feldman* and for failure to state a claim for which relief may be granted; grant the Motion to Dismiss filed by Smith (Doc. No. 43) for lack of subject-matter jurisdiction under *Rooker-Feldman* and because any independent claims against Smith are barred by judicial immunity or sovereign immunity; grant Stover's motion to dismiss as to Montgomery's legal malpractice claim as barred by *Rooker-Feldman* and decline to exercise supplemental jurisdiction over the state law conversion claim.

## III. THE PLAINTIFF'S OBJECTION

### A. Smith

The plaintiff's Objection first addresses his claims against Smith, and he begins by stating that, prior to receiving the 2024 R&R, he had filed a "Supplemental Complaint supplying some specifics about issues and actions attributable to defendant Smith" that he "incorporates" into his Objection. (Doc. No. 112 at 2.) The plaintiff's Supplemental Complaint purports to contain

"additional information regarding Defendant Philip E. Smith" that the plaintiff discovered after filing his original Complaint. (Doc. No. 104 at 1.) The plaintiff did not seek or obtain leave of court to file a supplemental or amended pleading, and the document is not authorized by the Federal Rules of Civil Procedure or the court's Local Rules. The court declines to consider the new allegations in the Supplemental Complaint.

Nonetheless, the plaintiff repeats the principle allegation in his Supplemental Complaint in his Objection: that Smith was "sitting in a vacant seat" and "ineligible for any type of immunity because he was acting unconstitutionally." (Doc. No. 112 at 3.) He also asserts that sovereign immunity applies to states, not county judges, and, further, that Smith is not entitled to immunity because he "violated clearly established statutory or constitutional rights of which a reasonable person would have known." (*Id.* at 15 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).) Montgomery also continues to argue that Smith's rulings in the divorce proceedings were erroneous as a matter of fact and law and that Smith abused his discretion and violated ERISA intentionally and negligently in disposing of his 401K plan's assets. (*Id.* at 3–5.) He includes a new claim: that Smith violated the Fifth Amendment to the United States Constitution by "initiating a taking of Plaintiff's proceeds without cause," in particular because the judge repeatedly denied the plaintiff's sister's attempts, with a "durable power-of-attorney in hand," to retrieve his proceeds from the court escrow account.

As set forth in the FAC, the claims against Smith are based on his alleged violations of the plaintiff's constitutional right to due process and equal protection by allowing the divorce proceeding to go forward at the same time as a criminal case against him, depriving him of the right to ask questions and present proof during his divorce proceedings, ignoring his arguments, refusing him access to a transcript of a hearing, depriving him of a fair trial, and, more generally,

wrongly applying the law. (*See, e.g.*, FAC ¶¶ 50, 51, 52, 55–59, 60, 88–90.) Although some of the plaintiff's claims, insofar as they seek to set aside Smith's rulings, may be barred by *Rooker-Feldman* (discussed below), it is abundantly clear that *all* of the claims in the FAC against Smith in his individual capacity are barred by the doctrine of judicial immunity.

Judicial immunity from suit can be overcome in only two situations. A judge is not immune from liability for non-judicial actions, *i.e.*, "actions not taken in the judge's judicial capacity," and actions that, "though judicial in nature, . . . are taken in the complete absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991). As Magistrate Judge Newbern explained, "the paradigmatic judicial act is the resolution of a dispute between parties who have invoked the jurisdiction of the court." *Morrison v. Lipscomb*, 877 F.2d 463, 465 (6th Cir. 1989) (citing *Forrester v. White*, 484 U.S. 219, 226 (1988)). And "the term 'jurisdiction' is to be broadly construed to effectuate the purposes of judicial immunity." *Brookings v. Clunk*, 389 F.3d 614, 623 (6th Cir. 2004) (quoting *Stump v. Sparkman*, 435 U.S. 349, 356 (1978)). A judge "acts in the clear absence of all jurisdiction 'only when the matter upon which he acts is clearly outside the subject matter of the court over which he presides.'" *Id.* (quoting *Johnson v. Turner*, 125 F.3d 324, 334 (6th Cir. 1997)). "As long as a judge has 'some' subject matter jurisdiction over the activity at issue, he may still claim immunity." *Orta v. Repp*, No. 23-3034, 2023 WL 5666161, at *2 (6th Cir. Sept. 1, 2023) (quoting *Barnes v. Winchell*, 105 F.3d 1111, 1122 (6th Cir. 1997)).

Here, all of the claims against Smith are premised upon judicial actions he took in his judicial capacity while presiding over the divorce proceedings between Montgomery and LBM. And, although the plaintiff is now attempting to present a Supplemental Complaint alleging that Smith acted without jurisdiction, the allegations in the FAC do not support such a claim, and a party may not assert a new claim nor assert a new argument in objections to a report and

recommendation. *See Murr*, 200 F.3d at 902 n.1 (explaining that "[c]ourts have held that while the Magistrate Judge Act, 28 U.S.C. § 631 *et seq.*, permits *de novo* review by the district court if timely objections are filed, absent compelling reasons, it does not allow parties to raise at the district court stage new arguments or issues that were not presented to the magistrate").

Further, insofar as the plaintiff asserts claims for damages and retroactive injunctive relief against Smith in his official capacity, those claims are barred by sovereign immunity, as the Magistrate Judge also explained. Montgomery objects that sovereign immunity applies to "states, not county judges." (Doc. No. 112 at 3.) But in Tennessee, "the judges of the chancery, circuit and criminal courts are state officers, elected and commissioned as such, holding state offices, created and existing for distinctively and essentially State purposes; and therefore they are not county officers . . . ." *Rains v. Rains*, 428 S.W.2d 650, 654 (Tenn. Ct. App. 1968) (citing *Judges' Salary Cases*, 75 S.W. 1061 (Tenn. 1903)); *see also* Tenn. Code Ann. § 17-1-203 ("The judges and chancellors are, notwithstanding § 17-1-102, judges and chancellors for the state at large, and as such, may, upon interchange and upon other lawful ground, exercise the duties of office in any other judicial district in the state."). A circuit court's jurisdiction is determined by the judicial district, rather than county, in which it sits. *See* Tenn. Code Ann. § 16-2-506 (establishing and defining Tennessee's judicial districts). And a suit against a state official in his official capacity is a suit against the state itself. *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985)). The plaintiff's claims against Smith in his official capacity are therefore barred by sovereign immunity unless some exception applies, and the plaintiff has not objected to the Magistrate Judge's conclusion that no exception applies here.

In other words, irrespective of *Rooker-Feldman*, all of the plaintiff's claims against Smith must be dismissed as barred by the doctrines of judicial immunity and sovereign immunity. The plaintiff's Objection to the dismissal of the claims against Smith will therefore be overruled, and Smith's Motion to Dismiss (Doc. No. 43) will be granted.

Because sovereign immunity is a jurisdictional doctrine, *Ford Motor Co. v. United States*, 768 F.3d 580 586 (6th Cir. 2014) (citation omitted), the official capacity claims will be dismissed without prejudice. *Accord Ernst v. Rising*, 427 F.3d 351, 367 (6th Cir. 2005). The dismissal of claims based on judicial immunity is a dismissal for failure to state a claim under Rule 12(b)(6) and, accordingly, may be with prejudice. *Accord Uhrig v. Johnson*, No. 24-5601, 2025 WL 1827793, at *1–2 (6th Cir. Mar. 27, 2025) (affirming dismissal with prejudice based on judicial immunity); *Burnham v. Friedland*, No. 21-3888, 2022 WL 3046966, at *2 (6th Cir. Aug. 2, 2022) (Thapar, J., concurring) ("[J]udicial immunity isn't a jurisdictional doctrine; it's an affirmative defense that goes to the merits." (citing *Bright v. Gallia Cnty.*, 753 F.3d 639, 648–50 (6th Cir. 2014)). The claims against Judge Smith in his individual capacity will be dismissed with prejudice.

**B. Real Estate Defendants**

As set forth above, the Magistrate Judge found, after exhaustive review, that the claims against Rogers, Birthright, Property Title, Exit, Schneider, Hertel, and Regal (the "Real Estate Defendants") should be dismissed under *Rooker-Feldman*, insofar the only relief the plaintiff seeks in this court is "to undo what Smith ordered in the divorce" and because "Montgomery cannot 'avoid *Rooker-Feldman* simply by clever pleading—by alleging that actions taken pursuant to a court order violate his rights without ever challenging the court order itself.'" (Doc. No. 75 at 22, 23 (quoting *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 88 (2d Cir. 2005)).) For example, Montgomery seeks an "injunction to prevent the closing of the sale of the 401K Plan owned property," for the return of the property to the 401K Plan, and for himself to be reinstated

as plan administrator (*id.* at 22 (quoting FAC ¶¶ 99–100)); and he demands that the Real Estate Defendants be required to "return fees and commissions received from the Plan" when the court-ordered sale closed because "[t]hey should not be allowed unjust enrichment" (*id.* (quoting FAC ¶ 102)). As the 2024 R&R finds, this relief would require undoing the division of property and assets in the Final Decree or the divorce court's subsequent orders approving the sale of the Lakeview Property and appointing LBM as plan administrator authorized to execute the necessary documents to convey the property, which necessarily entailed the payment of ordinary fees and commissions to the real estate professionals and title companies involved. (Doc. Nos. 38-1, 38-2, 38-3.)

The 2024 R&R, as set forth above, also addresses the question of whether the FAC includes additional allegations of improper conduct falling outside the scope of *Rooker-Feldman* that plausibly state claims for relief. Specifically regarding the Real Estate Defendants, the 2024 R&R finds that the FAC fails to "identify what role any real estate agent or firm . . . played in any relevant event or allege a specific act taken by any of these defendants" and, more generally, that "[n]aked assertions devoid of further factual enhancement" are insufficient to state a claim for relief. (*Id.* at 27 (citations omitted).)

The plaintiffs' Objection addresses his claims against the Real Estate Defendants, but he does not raise any specific objections to the Magistrate Judge's findings or recommendations, as required by Federal Rule of Civil Procedure 72. Instead, he largely reiterates arguments already made, without articulating why the Magistrate Judge's resolution of those arguments is erroneous. For instance, the plaintiff asserts that his claims are not barred by *Rooker-Feldman* because he "challenges the way we got here and the misconduct along the way, and not 'the outcome or final judgment of the state court proceedings.' . . . These are independent claims." (Doc. No. 112 at 13.)

The Magistrate Judge already rejected that argument, addressing both the claims that were completely barred by *Rooker-Feldman* and explaining why any allegations that arguably fall outside the scope of the *Rooker-Feldman* bar are not sufficient to state a claim for relief. The plaintiff has not raised any cogent argument calling into question the Magistrate Judge's conclusions and recommendations.

The plaintiff also raises some entirely new arguments and allegations. For example, he alleges that the Real Estate Defendants collectively never forwarded any sale purchase offers for plaintiff's consideration, violated their duty of care to verify the ownership of the property, are liable for "negligent misrepresentation and silent fraud," violated the Tennessee Residential Property Disclosure Act by engaging in a "secret sale" of the Lakeview Property, and violated the Tennessee Consumer Protection Act. (Doc. No. 112 at 8–10.) The court declines to consider these untimely allegations and arguments now. *Accord Murr*, 200 F.3d at 902 n.1.[4]

Even if they were not raised for the first time, the plaintiff has not addressed the Magistrate Judge's finding that the FAC fails to plead with any particularity any action (or inaction) taken by any particular individual real estate agent or company. The plaintiff's broad and non-specific allegations that the real estate agents and title companies, collectively, violated various laws and duties to him simply—under ERISA, RESPA, or state law—do not plausibly state any colorable cause of action under the circumstances presented here.

The plaintiff's Objection to the 2024 R&R's recommendation that the claims against the Real Estate Defendants and Rogers be dismissed will be overruled, and the Motions to Dismiss filed by Hertel and Regal (Doc. No. 35) and by Schneider, Exit, Rogers; Birthright, and Property

[4] The court also rejects his improper attempt to name and identify a new defendant.

Title (Doc. No. 27) will be granted on the basis that all claims against them are either precluded by *Rooker-Feldman* or because the FAC fails to state claims for which relief may be granted.

### C. ERISA Claims

The only basis for this court's jurisdiction invoked by the plaintiff are his purported federal civil rights claims against Smith, his claims against the Real Estate Defendants under RESPA, 12 U.S.C. § 2601, and his ERISA claims against LBM. *See* 28 U.S.C. § 1331. All other claims are state law claims over which the court has supplemental jurisdiction. 28 U.S.C. § 1367(a).[5] The plaintiff's claims for civil rights violations against Smith, as set forth above, are subject to dismissal on the grounds of judicial and sovereign immunity. His claims against the Real Estate Defendants are subject to dismissal under the *Rooker-Feldman* doctrine and for failure to state a claim for which relief may be granted. Thus, the only potential remaining basis for the court's exercise of original jurisdiction over any part of this case is the plaintiff's claim or claims under ERISA.

The court further finds that any claim under ERISA against LBM (or any other defendant) is subject to dismissal because it is barred by the *Rooker-Feldman* doctrine. *Rooker-Feldman*, when it applies, is a jurisdictional bar, *RLR Invs., LLC v. City of Pigeon Forge*, 4 F.4th 380, 385 (6th Cir. 2021), and, therefore, may be considered *sua sponte* by the court at any time, *Neff v. Flagstar Bank, FSB*, 520 F. App'x 323, 326 (6th Cir. 2013) (quoting Saker v. Nat'l City Corp., 90 F. App'x 816, 818 n.1 (6th Cir. 2004)).

[5] The court also takes note that one defendant, Rogers, is a citizen of New York, which gives rise to the possibility of diversity jurisdiction over the plaintiff's claim(s) against him, except that it is unclear whether the amount in controversy is met with respect to any claim against Rogers. The plaintiff does not invoke the court's diversity jurisdiction under 28 U.S.C. § 1332(a)(1). (*See* FAC ¶ 1.) And the claims against Rogers are being dismissed.

The specific relief that the plaintiff seeks regarding the Lakeview Property is in the form of an injunction "to prevent the closing of the sale of the 401K plan owned property, if not already closed," an injunction requiring the "return of the real property to the proper owner 'Bzbzbzboy Inc. 401K Plan and in its fully paid condition and reinstate plaintiff as the proper trustee and plan administrator"; an order requiring LBM to "immediately pay to Plaintiff all of the 401K Plan income collected from June 2016 to Present, to be deposited in 401K Plan specific bank account and to pay any uncollected rents representing los[s]es to the Plan" and to "return monies diverted to pay loans and specifically monies to pay her personal tax debt of $40,000+, and plaintiff's stolen and thrown away items"; and an order for "compensatory damages of $50,000" from each defendant. (FAC ¶¶ 99–101, 103, 105.) Setting aside the compensatory damages for the moment, each element of the plaintiff's requested relief against LBM, as the 2024 R&R explains, would require undoing or setting aside some portion of Judge Smith's Final Decree. Specifically:

> (1) An injunction to prevent the sale of the 401K plan owned property and requiring the "return of the real property to the proper owner 'Bzbzbzboy Inc. 401K Plan and in its fully paid condition and reinstate plaintiff as the proper trustee and plan administrator" would undo Smith's orders requiring that LBM "sell the [Lakeview Property]" (Doc. No. 38-1), appointing LBM "as the plan administrator, and trustee of BZBZBZboy Inc. 401k Plan, thereby replacing all previous Plan Administrator[]s, and/or TRUSTEES including, but not limited to [Montgomery]" (Doc. No. 38-3), and "reliev[ing Montgomery] of any further responsibility, authority, or right to interfere with [LBM's] Appointment as Substitute Plan Administrator/Trustee as she consummates the sale of the real property at issue in this case" (Doc. No. 38-3).
>
> (2) An order requiring LBM to "immediately pay to Plaintiff all of the 401K Plan income collected from June 2016 to Present, to be deposited in 401K Plan specific bank account and to pay any uncollected rents representing los[s]es to the Plan" would undo the divorce decree's division of the marital estate. (Doc. No. 38-1.)
>
> (3) An order requiring LBM to "return monies diverted to pay loans and specifically monies to pay her personal tax debt of $40,000+, and plaintiff's stolen and thrown away items" would undo the divorce decree's order that LBM "pay directly . . . the IRS debt of approximately $40,000" and "the balance of the HVAC loan from the proceeds of the [Lakeview Property] sale." (Doc. No. 38-1.)

Rooker-Feldman applies in "[(1)] cases brought by state-court losers [(2)] complaining of injuries caused by state-court judgments [(3)] rendered before the district court proceedings commenced [(4)] and inviting district court review and rejection of those judgments." *RLR Invs.*, 4 F.4th at 387 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 2854 (2005)). "The test is whether the plaintiff's injury stems from the state-court judgment, not whether the claims are identical." *Id.* at 388.

Even though here, unlike in *RLR Investments*, the plaintiff does not expressly ask the court to set aside Smith's Final Decree and subsequent orders implementing the Final Decree, his claims "essentially invite[]" this court to "review and reverse [an] unfavorable state-court judgment[]," *Exxon Mobil*, 544 U.S. at 283, insofar as he asks this court to enter orders undoing that judgment. In other words, the plaintiff "can only prevail" on his claims against LBM for injunctive relief "if the state court were wrong," making it clear that the Final Decree and subsequent orders are "the source of the injury." *Id.* Here, as in *RLR Investments*, LBM "took [Montgomery's] property as a consequence of [the Final Decree], not independently." *Id.* at 388–89. Consequently, Montgomery "asks for the type of review *Rooker-Feldman* forbids." *Id.*

This conclusion is further verified by the relief the plaintiff seeks against Smith and the arguments in his Objection. Montgomery argues that Smith's ruling that the $40,000 debt was marital debt because it was due to the plaintiff's "security account" was "intentional error," that Smith's authority to distribute marital assets did not "extend to destroying an ERISA protect[ed] retirement investment to the determinant of any party in violation of ERISA laws," and that Smith's rulings "violated ERISA laws by encroaching the Plan without proper due process." (Doc. No. 112 at 3–4; *see also id.* at 14 ("But for Smith's unnecessary and unlawful violations of ERISA laws and intentional interference, [Montgomery's and LBM's retirement funds] would be thriving

instead of being in the red.”).) In other words, Montgomery expressly attacks Smith’s *ruling* as violating federal law.

These claims for relief against LBM are therefore clearly barred by *Rooker-Feldman*. Further, insofar as the plaintiff seeks damages from LBM, the only source of his alleged injury is the above-referenced wrongs, and an award of damages for actions taken in accordance with the Final Decree would likewise require setting aside Smith’s division of assets in the divorce. This conclusion completely disposes of, and requires dismissal of, any ERISA-based claims in the FAC.

In his Objection, the plaintiff does not raise any argument directly addressing the Magistrate Judge’s findings as to the application of the *Rooker-Feldman* doctrine. Instead, he raises new claims, including that LBM violated Tennessee’s “prudent investor rule,” Tenn. Code Ann. § 35-14-103, and other state laws (*see* Doc. No. 112 at 10–11), and he argues that *Rooker-Feldman* does not bar the claims against LBM and Stover for misrepresentation.

The court declines to reach this latter issue, however. Having found that all claims over which the court has original jurisdiction must be dismissed, the court will decline to exercise supplemental jurisdiction over the remaining state law claims and will dismiss those claims without prejudice.

**D. Supplemental Jurisdiction**

Under 28 U.S.C. § 1367, the court “may decline to exercise supplemental jurisdiction of a claim” that falls within the scope of § 1367(a), if “the district court has dismissed all claims over which it has original jurisdiction.” 28 U.S.C. § 1367(c). Although dismissal is not mandatory because supplemental jurisdiction is a doctrine of discretion, not of plaintiff’s right, “[g]enerally, if the federal claims are dismissed before trial, the state claims should be dismissed as well.” *Harper v. AutoAlliance Int’l, Inc.*, 392 F.3d 195, 210 (6th Cir. 2004) (internal quotation marks omitted). The Sixth Circuit, in fact, has repeatedly advised that the district courts should not

exercise supplemental jurisdiction over state law claims once they dismiss all claims over which they have original jurisdiction, unless "interests of judicial economy and the avoidance of multiplicity of litigation" trump the interest in "needlessly deciding state law issues." *Brown v. Cassens Transport Co.*, 546 F.3d 347, 363 (6th Cir. 2008) (quoting *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006)).

Here, although this case has been pending for a substantial period of time due to the plaintiff's incarcerated status, his delay in filing the present Objection to the 2024 R&R, and his failure to effect service of process on two of the defendants, this case has not proceeded to discovery or even to the entry of a case management order. The remaining state law claims appear to have little merit and to be based primarily upon the plaintiff's dissatisfaction with the outcome of his divorce. The interests of judicial economy and the avoidance of a multiplicity do not trump the interest in "needlessly deciding state law issues." The court, therefore, will decline to exercise supplemental jurisdiction over the remaining state law claims. Although the court has entered a default against defendant Longaberger based on his failure to respond or appear in this case, that default will be vacated and the remaining state law claims against LBM, Stover, and Longaberger will be dismissed without prejudice.

## IV. THE PLAINTIFF'S RESPONSE TO 2024 SHOW CAUSE ORDER

The plaintiff's Objection also incorporates a response to the 2024 Show Cause Order, which directed the plaintiff to show cause why his claims against LBM and Taylor should not be dismissed under Rule 4(m) for failure to effect timely service of process. The plaintiff explains at great length that he did not realize that they had not been served until he received the 2026 Show Cause Order. He states that he has a then-anticipated state criminal court date on August 31, 2026 and "hopes to perform perfect service at that time." (Doc. No. 112 at 2.) He has not provided a further update since that court date.

The court observes, as set forth above, that the Clerk of Court's Order denying the plaintiff's Motion for Entry of Default as to LBM informed him as of May 2024 that LBM had not been served. (*See* Doc. No. 70.) The plaintiff's receipt of that Order is confirmed by his filing a second Motion for Entry of Default as to Longaberger. Regardless, the plaintiff's failure to serve LBM and Taylor will be rendered moot by the dismissal of the claims against them as set forth herein.

## V. CONCLUSION

For the reasons set forth herein, the 2024 R&R (Doc. No. 75) will be accepted and adopted in part, insofar as it recommends (1) the dismissal of all claims against Smith based on judicial and sovereign immunity and (2) the dismissal of all claims against the Real Estate Defendants for failure to state a claim for which relief may be granted and because any claims that seek to set aside Judge Smith's Final Decree and Orders implementing the Final Decree are barred by the *Rooker-Feldman* doctrine. Smith's Motion to Dismiss (Doc. No. 43), Hertel and Regal's Motion to Dismiss (Doc. No. 35), and the Motion to Dismiss filed by Birthright, Exit, Property Title, Rogers, and Schneider (Doc. No. 27) will be granted, and all claims against these defendants will be dismissed.

The court further finds, *sua sponte*, that the ERISA claims against LBM—who has never been served in this case—are barred by *Rooker-Feldman*. As a result, the court lacks subject matter jurisdiction over those claims, and they will be dismissed in their entirety.

Having concluded that all claims over which the court has original jurisdiction must be dismissed, the court will decline to exercise supplemental jurisdiction over the remaining state law claims in this case and will dismiss those claims without prejudice. Defendant Stover's Motion to Dismiss (Doc. No. 47) will therefore be terminated as moot. Under Tennessee law, the plaintiff will have one year from the dismissal of these state law claims over which the court declines to

exercise supplemental jurisdiction to refile them in Tennessee state court. *See* Tenn. Code Ann. §§ 28-1-105(a), 28-1-115.

An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge